UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNILOC UNITED STATES OF AMERICA, INC., et al.,<br><br>    Plaintiffs,<br><br>        v.<br><br>APPLE INC.,<br><br>    Defendant. | Case No. 18-cv-00362-PJH<br><br>**ORDER**<br><br>Re: Dkt. Nos. 104, 106, 109, 116 |

Apple Inc.'s ("Apple") motion to dismiss (Dkt. 116), motion for sanctions (Dkt. 109), and motion for protective order (Dkt. 104), as well as Uniloc USA, Inc.'s and Uniloc Luxembourg, S.A.'s (together "Uniloc") motion to file under seal (Dkt. 106) came on for hearing before this court on April 11, 2018. Plaintiffs appeared through their counsel, James Foster. Defendant appeared through its counsel, Clayton James, Srecko Vidmar, and Alali Dagogo-Jack. Having read the papers filed by the parties and carefully considered their arguments and the relevant legal authority, and good cause appearing, the court hereby rules as follows.

**BACKGROUND**

On June 2, 2017, Uniloc filed its original Complaint in this action in the Eastern District of Texas, asserting infringement of U.S. Patent No. 7,690,556. Dkt. 1. On August 22, 2017, this action was consolidated with other cases in the Eastern District of Texas, with this as the Lead Case. Dkt. 24. As such, the docket contains a number of filings concerning other cases.

On December 19, 2017, Uniloc filed a First Amended Complaint, the operative

complaint in this case. Dkt. 68. The amended complaint alleges direct infringement, induced infringement, and contributory infringement of a single patent.

On December 22, 2017, the Eastern District of Texas court granted Apple's motion to transfer the consolidated cases to the Northern District of California. Dkt. 71. On January 9, 2018, Apple filed a motion to dismiss Uniloc's First Amended Complaint. Dkts. 76, 116. The case was transferred to this District on January 17, 2018. Dkt. 78.

On January 2–4, Uniloc's expert Chuck Easttom inspected portions of Apple's source code at the offices of Apple's counsel. Dkt. 107–10 ¶ 8.

On January 9, 2018, Apple moved for sanctions pursuant to Rule 11 based on Uniloc filing its complaint without undertaking an adequate investigation. Dkts. 77, 109.

On January 19, 2018, the case was assigned to Magistrate Judge Sallie Kim. Dkt. 79. On January 25, 2018, Magistrate Judge jurisdiction was declined. Dkt. 82. On January 26, 2018, this case was reassigned to Judge White. Dkt. 84. On January 29, 2018, Judge White granted the parties' stipulation to extend Uniloc's deadline to reply to Apple's motion for sanctions. Dkt. 87. Uniloc stated that it needed to examine Apple's source code and depose an Apple employee to reply to Apple's motion. Dkt. 87.

On February 7–8, Uniloc's expert Chuck Easttom again inspected portions of Apple's source code at the offices of Apple's counsel. Dkt. 107–10 ¶ 8. Uniloc served a deposition notice for Apple employee Steve Jackson to take place on February 14, 2018, and when that date was refused a new notice was issued for March 12, 2018. Dkt. 115–2. Similarly, Uniloc served a deposition notice for former Apple employee Anil Kandangath to take place on February 7 (Dkt. 102–8), and when that date was refused a new notice was issued for February 12 (Dkt. 102–2).

On February 21, 2018, this case was related with case 18-cv-361, and on February 22, 2018, it was reassigned to this court. Dkts. 103, 105. On February 21, 2018, Apple filed a motion for a protective order to preclude Uniloc from conducting depositions related to Apple's Rule 11 sanctions motion. Dkt. 104.

**DISCUSSION**

**A.     Legal Standards**

   **1.     Motion to Dismiss Under Rule 12(b)(6)**

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests for the legal sufficiency of the claims alleged in the complaint. Ileto v. Glock, 349 F.3d 1191, 1199–1200 (9th Cir. 2003). Under Federal Rule of Civil Procedure 8, which requires that a complaint include a "short and plain statement of the claim showing that the pleader is entitled to relief," a complaint may be dismissed under Rule 12(b)(6) if the plaintiff fails to state a cognizable legal theory, or has not alleged sufficient facts to support a cognizable legal theory. Somers v. Apple, Inc., 729 F.3d 953, 959 (9th Cir. 2013).

While the court accepts as true the factual allegations in the complaint, legally conclusory statements not supported by actual factual allegations need not be accepted. Ashcroft v. Iqbal, 556 U.S. 662, 678–79 (2009). The complaint must proffer sufficient facts to state a claim for relief that is plausible on its face. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 558–59 (2007).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citation omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" Id. at 679 (quoting Fed. R. Civ. P. 8(a)(2)). Where dismissal is warranted, it is generally without prejudice, unless it is clear the complaint cannot be saved by any amendment. Sparling v. Daou, 411 F.3d 1006, 1013 (9th Cir. 2005).

   **2.     Motion for Sanctions Under Rule 11**

Federal Rule of Civil Procedure 11 imposes upon attorneys a duty to certify that they have read any pleadings or motions they file with the court and that such pleadings and motions are well-grounded in fact, have a colorable basis in law, and are not filed for an improper purpose. Fed. R. Civ. P. 11(b); see also Business Guides, Inc. v. Chromatic Comm. Enters., Inc., 498 U.S. 533, 542 (1991). Rule 11 authorizes sanctions for its

violation and serves "to deter baseless filings in district court and thus . . . streamline the administration and procedure of the federal courts." Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 393 (1990).

The 9th Circuit has held that an attorney may not be sanctioned under Rule 11 "for a complaint that is not well-founded, so long as she conducted a reasonable inquiry . . . [nor] [m]ay she be sanctioned for a complaint which is well-founded, solely because she failed to conduct a reasonable inquiry." In re Keegan Management Co. Sec. Litig., 78 F.3d 431, 434 (9th Cir. 1996). Under that test, the district court must "consider after-acquired factual evidence that would have adequately supported the complaint" when determining whether sanctions are appropriate under Rule 11. Id. (holding district court erred when it "excluded from consideration any evidence supporting the suit which was unknown to counsel at the time of filing").

The party seeking sanctions bears the burden of demonstrating by clear and convincing evidence that sanctions are justified. In re Zilog, Inc., 450 F.3d 996, 1007 (9th Cir. 2006); Tom Growney Equip., Inc. v. Shelley Irrigation Dev., Inc., 834 F.2d 833, 837 (9th Cir. 1987). Rule 11 sanctions are "an extraordinary remedy, one to be exercised with extreme caution." Operating Eng'rs Pension Trust v. A-C Co., 859 F.2d 1336, 1345 (9th Cir. 1988). Sanctions are reserved for "rare and exceptional case[s] where the action is clearly frivolous, legally unreasonable or without legal foundation, or brought for an improper purpose." Id. at 1344.

In the context of patent infringement actions, a reasonable inquiry under Rule 11 requires that an attorney "interpret the asserted patent claims and compare the accused device with those claims before filing a claim alleging infringement." Q-Pharma, Inc. v. Andrew Jergens Co., 360 F.3d 1295, 1300–01 (Fed. Cir. 2004). That inquiry "can simply consist of a good faith, informed comparison of the claims of a patent against the accused subject matter." Id. at 1302.

**3. Motion to Seal**

Local Rule 79–5 governs filing documents under seal in civil cases. "A sealing

4

1 order may issue only upon a request that establishes that the document, or portions
2 thereof, are privileged, protectable as a trade secret or otherwise entitled to protection
3 under the law. . . . The request must be narrowly tailored to seek sealing only of sealable
4 material[.]" Civ. L.R. 79–5(b).

A party seeking leave to file documents under seal in conjunction with a non-dispositive motion must make a showing why good cause exists to file the information under seal. A party is not permitted to file a document under seal simply because the opposing party has designated it "Confidential" or claims it is subject to a protective order.

**B.    Analysis**

   **1.    Motion to Dismiss**

Apple argues (1) Uniloc does not state a claim for direct infringement; (2) Uniloc does not state a claim for induced infringement; and (3) Uniloc does not state a claim for contributory infringement.

   **a.    Direct Infringement**

For a direct infringement claim, plaintiff must allege that defendant, without authority, makes, uses, offers to sell, sells, or imports any patented invention within the United States during the term of the patent. 35 U.S.C. § 271(a).

First, Apple argues that Uniloc's complaint only provides a mapping of the patent's claim elements to product features for the iPhone 6S, and not to any of the other accused products, so Uniloc fails to state a claim for all accused products other than the iPhone 6S. Dkt. 116 at 16. Second, Apple argues that Uniloc fails to state a claim for the iPhone 6S because Uniloc's claim map fails to allege that Apple's products measure inclines in a way covered by the asserted patent limitations. Dkt. 116 at 16–17.

Apple's argument that Uniloc only alleges that the iPhone 6S infringes—and not any other products—is not convincing. Uniloc plainly uses the iPhone 6S as an example and alleges that "[a]ll of the Accused Products operate in substantially the same manner with respect to the accused functionality." Dkt. 68–1 at 1 n.2.

With respect to Apple's second argument, it argues that Uniloc does not claim with

sufficient specificity that Apple's products perform the precise mathematical equation claimed by the patent: identifying a vertical travel up portion of a step and a vertical travel down portion of a step, and comparing the two to determine the incline of a surface being walked upon. Dkt. 116 at 16–17. But Uniloc's claim table addresses that claim, including that particular limitation. Dkt. 68–1 at 14–19. Uniloc alleges that Apple's "Health" application, and the "Activity" application used along with Apple Watch, use software objects called "CMPedometer" and "CMAltimeter" to process "relative altitude updates, i.e., elevation changes" that allow Apple to calculate incline. Id. at 14–15. Uniloc provides evidence explaining how Apple's products collect and process altitude-related changes on a relative basis, allowing them to compare upward and downward movements. Id. at 17–18. Uniloc asserts that Apple's products calculate incline by "identifying a vertical travel up portion of the step, identifying a vertical travel down portion of the step, and computing a difference[.]" Dkt. 68–1 at 14. Uniloc then describes with support certain Apple tools that track steps and relative altitude. Rule 8 requires no more.

Apple argued at the hearing that its products do not in fact work the way Uniloc alleges. Apple also argued that the patent claim should be construed to count a single up-and-down step rather than a collection of steps. Both arguments may ultimately prove persuasive following claim construction and discovery. But those arguments do not support a motion to dismiss on the pleadings.

### b. Induced Infringement

"Whoever actively induces infringement of a patent shall be liable as an infringer." 35 U.S.C. § 271(b). "To prevail on inducement, the patentee must show, first that there has been direct infringement, and second that the alleged infringer knowingly induced infringement and possessed specific intent to encourage another's infringement." Kyocera Wireless Corp. v. Int'l Trade Comm'n, 545 F.3d 1340, 1353–54 (Fed. Cir. 2008) (internal quotation marks omitted).

However, "'knowledge of the acts alleged to constitute infringement' is not

enough." Warner–Lambert Co. v. Apotex Corp., 316 F.3d 1348, 1363 (Fed. Cir. 2003) (quoting Manville Sales Corp. v. Paramount Sys., Inc., 917 F.2d 544, 553 (Fed. Cir. 1990)). "[L]iability for induced infringement can only attach if the defendant knew of the patent and knew as well that 'the induced acts constitute patent infringement.'" Commil USA, LLC v. Cisco Sys., Inc., 135 S. Ct. 1920, 1926 (2015) (quoting Glob.-Tech Appliances, Inc. v. SEB S.A., 563 U.S. 754, 766 (2011)).

Inducement also requires specific intent to encourage another's infringement—not merely to encourage the acts that constitute direct infringement. DSU Med. Corp. v. JMS Co., 471 F.3d 1293, 1305–06 (Fed. Cir. 2006). "While proof of intent is necessary, direct evidence is not required; rather, circumstantial evidence may suffice." Id. at 1306. "Inducement can be found where there is evidence of active steps taken to encourage direct infringement, which can in turn be found in advertising an infringing use or instructing how to engage in an infringing use." Takeda Pharm. U.S.A., Inc. v. W.-Ward Pharm. Corp., 785 F.3d 625, 630–31 (Fed. Cir. 2015); In re Bill of Lading Transmission & Processing Sys. Patent Litig., 681 F.3d 1323, 1341–42 (Fed. Cir. 2012) (reasonable inference that defendants intended to induce infringement where they advertise or promote infringing use of product).

Apple argues that that Uniloc does not plead Apple's knowledge of infringement, its specific intent to induce infringement, or any affirmative acts undertaken to induce infringement.

Because Uniloc has adequately alleged direct infringement as explained above, it has adequately pled the first requirement of induced infringement.

Uniloc must allege that Apple had "knowledge of the existence of the patent." Uniloc's pleading plausibly alleges that Apple was on notice of the patent at least since it was served by the original complaint in June 2017. Dkt. 68 ¶ 15.

Uniloc must allege that Apple knowingly induced infringement and possessed specific intent to encourage another's infringement. Apple argues that Uniloc fails to meet this requirement because Uniloc points only to general websites without identifying

7

specific content. Dkt. 116 at 17. But Uniloc alleges that Apple advertised infringing uses and instructed customers how to engage in infringing uses in specific Apple advertising materials attached to the claim map. For example, Uniloc includes screenshots of Apple advertising its "Health" app that uses and reports on information collected in an allegedly-infringing manner. Dkt. 68–1 at 4–5, 14, 24–27, 30–32. Uniloc also cites Apple's developer documentation that instructs developers on how to use certain allegedly-infringing processes. Id. at 9–11, 15–18. These materials are much more specific than the "five general websites" underlying Apple's argument. Because "[i]nducement can be found . . . in advertising an infringing use or instructing how to engage in an infringing use," the court finds Uniloc's allegations sufficient to state a claim. Takeda Pharm. U.S.A., Inc., 785 F.3d at 630–31.

### c. Contributory Infringement

Title 35 provides for liability for contributory infringement of a patent: "Whoever offers to sell or sells within the United States or imports into the United States a component of a patented machine, manufacture, combination or composition, or a material or apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial noninfringing use, shall be liable as a contributory infringer." 35 U.S.C. § 271(c).

"To establish contributory infringement, the patent owner must show the following elements . . . : (1) that there is direct infringement, (2) that the accused infringer had knowledge of the patent, (3) that the component has no substantial noninfringing uses, and (4) that the component is a material part of the invention." Fujitsu Ltd. v. Netgear Inc., 620 F.3d 1321, 1326 (Fed. Cir. 2010); accord Koninklijke Philips N.V. v. Zoll Med. Corp., 656 F. App'x 504, 522 (Fed. Cir. 2016).

Regarding the first element, Uniloc has adequately pled direct infringement, as explained above.

Regarding the second element, Uniloc must allege that Apple had "knowledge of the existence of the patent." Uniloc's pleading plausibly alleges that Apple was on notice of the patent at least since it was served by the original complaint in June 2017. Dkt. 68 ¶ 15.

Regarding the third element, the "component" must not have a substantial noninfringing use. "Component" has been construed to cover software components, and the provision also applies to practicing a patented process. i4i Ltd. Partnership v. Microsoft Corp., 598 F.3d 831, 849 (Fed. Cir. 2010) (rejecting argument that software could not be a component under § 271(c)). Moreover, contributory infringement can occur whether the "component" is the entire product or whether a component is "bundled together with noninfringing components[.]" Conair Corp. v. Jarden Corp., 2014 WL 3955172, *5 (S.D.N.Y. 2014) ("the component's being bundled together with noninfringing components did not defeat the plaintiff's contributory infringement claim") (citing Ricoh Co. v. Quanta Computer Inc., 550 F.3d 1325, 1336–39 (Fed. Cir. 2008)); Convolve, Inc. v. Dell Inc., 2015 WL 574458, *5 (E.D. Tex. 2015) ("computer systems were components especially made or adapted for use in a way that infringes").

"Unless a commodity 'has no use except through practice of the patented method,' the patentee has no right to claim that its distribution constitutes contributory infringement." Sony Corp. of Am. v. Universal City Studios, Inc., 464 U.S. 417, 441 (1984) (holding regarding copyright, but discussing patent law) (quoting Dawson Chemical Co. v. Rohm & Hass Co., 448 U.S. 176, 198 (1980)) (citation omitted). "A sale of an article which though adapted to an infringing use is also adapted to other and lawful uses, is not enough to make the seller a contributory infringer. Such a rule would block the wheels of commerce." Id. (quoting Henry v. A.B. Dick Co., 224 U.S. 1, 48 (1912), overruled on other grounds, Motion Picture Patents Co. v. Universal Film Mfg. Co., 243 U.S. 502, 517 (1917)).

Regarding software and hardware combinations, like the present case, there are not noninfringing uses of components where there are "distinct and separate components

9

used only to perform the allegedly infringing" methods. Ricoh, 550 F.3d at 1336. If the products "contain hardware or software components that have no substantial noninfringing use other than to practice [plaintiffs'] claimed methods, . . . contributory infringement may appropriately be found[.]" Ricoh, 550 F.3d at 1340. Courts consider "specific hardware and software" combinations that perform particular tasks as distinct components. E.g., Fujitsu Ltd., 620 F.3d at 1330–31 ("the component at issue here is the specific hardware and software that performs fragmentation . . . . the fragmentation functions of the accused products in this case are 'separate and distinct' features and we must treat them separately in analyzing contributory infringement"); i4i Ltd. Partnership, 598 F.3d at 849 (Microsoft Word was the larger product, but the infringement allegations focused on the XML Editor within Word—the many uses of Word that did not involve the XML Editor did not constitute substantial noninfringing uses. The XML Editor was "separate and distinct" from all other functions of Word, and contributory infringement analysis should be based on this separable feature, rather than the entire product.).

Uniloc alleges that Apple's software operating in conjunction with hardware is "capable of calculating the number of steps taken . . . and distance covered . . . by a user, as well as the user's change in elevation[.]" Dkt. 68 ¶¶ 10, 14. Uniloc identifies the "Health" app in particular. Id. ¶ 10. In the claim map attached to the complaint, Uniloc alleges that the particular components it is targeting "comprise an incline logic to utilize the motion detected by the accelerometer to make a calculation of the incline of a surface . . . based on identifying a vertical travel up portion and the vertical travel down portion of the step." Dkt 68–1 at 14–15. Uniloc identifies particular pieces of hardware and software it alleges Apple combines to create a discreet infringing component: the accelerometer, the CMPedometer code object, the CMAltimeter code object, and the functions that track a user's relative altitude and number of floors ascended or descended. Id. at 14–19.

The court is not now adjudicating the factual accuracy of Uniloc's allegations; rather, the court assesses whether Uniloc's pleading and supporting, non-conclusory

factual allegations allow the court to draw a reasonable inference that the defendant is liable for the misconduct alleged such that the claim has facial plausibility. The court finds that Uniloc sufficiently pled the existence of a component comprised of a hardware and software combination within the products at issue that has no substantial use other than to make a calculation of the incline of a surface based on identifying a vertical travel up portion and the vertical travel down portion of a step.

Regarding the fourth element, the court finds that Uniloc sufficiently alleges that the alleged infringing component is a material part of the inventions at issue.

Therefore, Apple's motion to dismiss is DENIED.

### 2. Motion for Sanctions

A motion for sanctions requires proof by clear and convincing evidence both that (1) Uniloc did not conduct an adequate pre-investigation filing; and (2) the complaint is not in fact well-founded, based on all evidence supporting the suit whether or not known to Uniloc. In re Keegan Management Co., Sec. Litig., 78 F.3d 431, 434 (9th Cir. 1996).

Apple's papers argue that only Uniloc's pre-suit investigation is relevant to the imposition of sanctions, and that any discovery or other post-filing activity is irrelevant to the imposition of sanctions. Dkt. 120 at 13 ("Post-Suit Discovery Is Irrelevant to Uniloc's Ability to Respond to Apple's Rule 11 Motion").

Apple's motion fails because it does not show by clear and convincing evidence at this time a necessary element for the imposition of sanctions: that the complaint is not in fact well-founded, based on all evidence supporting the suit whether or not known to Uniloc at the time of filing. It is unsurprising that Apple fails to satisfy that element given that it argues such a showing would be "irrelevant" to the motion.

Generously construed, Apple's arguments on this element are largely overlapping with those in its motion to dismiss: Uniloc's allegations are so "bare bones" and "conclusory" that it could not reasonably believe it has a viable claim (Dkt. 109 at 9–10); Uniloc's allegations do not accurately describe "the actual functionality of Apple's products" (Dkt. 109 at 10); Uniloc failed to respond to letters Apple sent concerning this

11

1 litigation; third party statements on public message boards about how Apple's products
2 work are factually at odds with Uniloc's claims (Dkt. 120 at 11–12); an entity that formerly
3 owned the patents prepared or paid for a report commenting that available fitness
4 trackers, including the iPhone 6 and 6 PLUS, did not use the patent's method (Dkt. 120 at
5 2–3); and Uniloc's expert's early review of Apple's source code prior to completion of an
6 expert report has not sufficiently addressed how Apple's software invokes each of the
7 claim limitations as Apple construes them (Dkt. 120 at 6–7).

Those sources of information are not enough for Apple to carry its burden of proving by clear and convincing evidence that the complaint is not in fact well-founded.

This motion has simply been brought too soon for the court to determine whether sanctions are warranted. Although Apple raises substantial questions as to the adequacy of Uniloc's pre-filing investigation, the court cannot determine whether the complaint is in fact well-founded based on evidence not available to Uniloc without claim construction and an evidentiary foundation. As such, Apple's motion for sanctions is DENIED without prejudice to being raised after the merits of the action are resolved.

### 3. Motion for Protective Order

Apple seeks a protective order to prevent Uniloc from deposing an employee (Jackson) and a former employee (Kandangath). Apple primarily argues that any discovery concerning events or Uniloc's knowledge after it filed the claim is irrelevant, because only Uniloc's pre-suit investigation is relevant to Apple's sanctions motion. Uniloc primarily argues that the depositions are necessary to reply to Apple's Rule 11 sanctions motion.

Given this court's order denying Apple's motion for sanctions, Apple's motion for a protective order is DENIED AS MOOT. As there is no pending motion for sanctions, the depositions are no longer relevant to respond to a motion for sanctions. However, this order does not address party discovery unrelated to the denied motion for sanctions, and the parties are expected to follow otherwise-governing discovery protocol to the extent similar depositions are relevant to party discovery in this action.

### 4. Motion to Seal

Apple seeks to maintain under seal six limited and specific references to portions of Apple's source code, including names of particular source code variables, functions, and files. Dkt. 111. Apple argues its source code is extremely sensitive information that contains proprietary and trade secret descriptions of the technical infrastructure and design of Apple's software and hardware products, the disclosure of which would cause significant competitive harm. Id. at ¶¶ 4, 6. Apple also contends that public disclosure of the particular portions of its source code that Apple seeks to maintain under seal would create a security risk by potentially allowing unauthorized access to or hacking of Apple's products. Id. at ¶ 5.

The court finds that the redactions to Uniloc's opposition to Apple's motion for sanctions, found at Dkts. 106–107 and attachments, are narrowly-tailored and that Apple has shown good cause to seal the redacted portions of those documents.

### CONCLUSION

For the foregoing reasons, defendant's motion to dismiss is DENIED; defendant's motion for sanctions is DENIED WITHOUT PREJUDICE; defendant's motion for a protective order is DENIED AS MOOT; and plaintiff's motion to file under seal is GRANTED.

**IT IS SO ORDERED.**

Dated: 5/25/2018

_____
PHYLLIS J. HAMILTON
United States District Judge